37 S.W.3d 152 (2001)
ARLINGTON INDEPENDENT SCHOOL DISTRICT, Appellant,
v.
TEXAS ATTORNEY GENERAL, Appellee.
No. 03-00-00219-CV.
Court of Appeals of Texas, Austin.
January 11, 2001.
*155 Jennifer S. Riggs, Hill Gilstrap Adams & Graham, L.L.P., Austin, for Appellant.
Brenda Loudermilk, Asst. Atty. Gen., Austin, for Appellee.
Before Chief Justice ABOUSSIE, Justices B.A. SMITH and PATTERSON.
PATTERSON, Justice.
In this case, we consider the scope of the agency memoranda exception of the Texas Public Information Act. See Tex. Gov't Code Ann. § 552.111 (West 1994). Following two requests by Arlington Independent School District ("Arlington ISD") for open records determinations regarding staff surveys it had conducted in 1998 and 1999,[1] the attorney general issued two informal letter rulings, advising that the compiled survey results must be disclosed. Tex.Att'y Gen. OR98-3164 (1998), OR99-2414 (1999). Arlington ISD challenged both rulings in suits seeking declaratory judgments and writs of mandamus. See Tex.Gov't Code Ann. §§ 522.324, .325 (West Supp.2001) & § 552.353 (West 1994 & Supp.2001). After consolidating the two lawsuits, the district court granted the attorney general's motion for summary judgment and denied Arlington ISD's motion. We affirm the district court's judgment.

THE CONTROVERSY
According to the Texas Education Code, school districts are required to engage in district-level and site-based decision-making. Tex.Educ.Code Ann. § 11.251 (West 1996) & §§ 11.252, .253 (West 1996 & Supp.2001). In particular, section 11.253 requires each school district to "maintain current policies and procedures to ensure that effective planning and site-based decision-making occur at each campus to direct and support the improvement of student performance for all students." Id. § 11.253(a). To improve student performance, campus improvement plans must be developed, reviewed, and revised annually. Id. § 11.253(c). In addition, school districts must have established policies and procedures "to periodically obtain broad-based community, parent, and staff input and to provide information to those persons regarding the recommendations of the district-level committee." Id. § 11.252(e); cf. id. § 11.253(g) (imposing the same requirements with respect to campus planning).
To comply with these statutory requirements, Arlington ISD uses various tools to measure school effectiveness, including an annual survey of the professional and paraprofessional staff at each campus in the district. The survey is administered in a manner that ensures the respondents' anonymity. The survey includes questions designed to elicit opinions on matters that affect the learning environment and student performance. Possible responses to the questions and the declarative statements comprising the survey range from "to a great extent" to "to no extent" and from "strongly agree" to "strongly disagree," respectively. The survey also permits respondents to submit narrative comments. The responses to the surveys are compiled by individual campuses as well as district-wide. Three types of documents summarize these survey responses: (1) a bar graph listing several broad categories, (2) a compilation of responses by aggregate percentages for each answer, and (3) transcribed narrative comments of the respondents. The district-wide survey results and narrative comments are not at issue here.
*156 The facts of this case are undisputed. Sometime after March 1998, Arlington ISD received an open records request from the Arlington Star Telegram newspaper, seeking the "`results of the March 1998 school effectiveness survey for professional staff, including any and all written comments, for each and every school district.'" Tex.Att'y Gen. OR98-3164, at 1. Arlington ISD sought an open records determination on this request from the attorney general, asserting that the requested information fell within the agency memoranda exception of the Act. See Tex. Gov't Code Ann. § 552.111 & § 552.301 (West 1994 & Supp.2001). In response, the attorney general issued an informal open records letter ruling. Tex.Att'y Gen. OR98-3164. This ruling advised Arlington ISD that it could withhold narrative comments from respondents, but that the compiled results, namely, the bar graph and the aggregate percentages of respondents for each answer, must be disclosed. Id. at 2. Arlington ISD filed suit, seeking a declaratory judgment that the requested information may be withheld and a writ of mandamus against the attorney general to withdraw its ruling. See Tex.Gov't Code Ann. §§ 552.324, .325, .353.
The following year, Arlington ISD received an open records request from the Arlington Star-Telegram newspaper for "`[a]ny and all results of the Spring 1999 school effectiveness surveys.'" Tex.Att'y Gen. OR99-2414, at 1. Arlington ISD again sought a ruling from the attorney general, urging that the survey results should be withheld under the agency memoranda exception of the Act. See Tex.Gov't Code Ann. §§ 552.111, .301. The attorney general issued an informal letter ruling, advising the District that it could withhold narrative comments from respondents, but that it must disclose the bar graph and the aggregate percentages of respondents for each answer. Tex.Att'y Gen. OR99-2414, at 1. Arlington ISD responded by filing suit for a declaratory judgment that the survey results need not be disclosed and for a writ of mandamus against the attorney general to withdraw the ruling. See Tex.Gov't Code Ann. §§ 552.324, .325, .353.
Arlington ISD filed a motion for summary judgment in its first lawsuit. After Arlington ISD commenced the second suit, the lawsuits were consolidated into this single cause. The attorney general filed a cross-motion for summary judgment. After considering both parties' motions for summary judgment, the district court granted the attorney general's motion and denied Arlington ISD's motion. Arlington ISD brings this appeal from the district court's judgment.

DISCUSSION
The propriety of a ruling on a motion for summary judgment raises a question of law which we review de novo. See Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex.1994). The proper inquiry on appeal is whether the defendant, in seeking summary judgment, fulfilled its initial burden of establishing that no genuine issue of material fact exists and that judgment should be granted as a matter of law. City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 675-79 (Tex. 1979). Evidence is viewed in the light most favorable to the non-movant with all reasonable inferences indulged and any doubts resolved in favor of the non-movant. Nixon v. Mr. Property Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex.1985).
When both parties have filed motions for summary judgment and the district court has granted one motion and denied another, we review the summary judgment proof presented by the parties, determine all questions presented, and "render such judgment as the trial court should have rendered." Commissioners Court v. Agan, 940 S.W.2d 77, 80 (Tex. 1997). "[W]hen there are multiple grounds for summary judgment and the order does not specify the ground on which the summary judgment was granted, the appealing party must negate all grounds on appeal." State Farm Fire & *157 Cas. Co. v. S.S. & G.W., 858 S.W.2d 374, 381 (Tex.1993); accord Carr v. Brasher, 776 S.W.2d 567, 569 (Tex.1989). If the appellant fails to negate each ground on which the judgment may have been rendered, we must uphold the summary judgment. See Carr, 776 S.W.2d at 569. While the district court's order does not specify the ground on which it rendered judgment, the attorney general's motion advances a single ground on which the judgment may be based. Therefore, we must affirm the judgment only if that argument has merit.
Agency Memoranda Exception of the Act
The attorney general argues that the survey results do not fall within the agency memoranda exception of the Act because they represent factual material and are not deliberative. See Tex.Gov't Code Ann. § 552.111. The attorney general maintains that this exception does not protect written observations of facts and events that are severable from advice, opinions, and recommendations. Arlington ISD asserts that all of the survey results relate to policymaking, are deliberative, and therefore should be withheld under the agency memoranda exception. See id. We believe that the attorney general's position strikes the proper balance between the public's right to governmental information and the entity's ability to conduct its affairs.
The Texas Public Information Act governs access to governmental information. Tex.Gov't Code Ann. §§ 552.001.353 (West 1994 & Supp.2001). At the heart of the Act is the principle that the public is entitled to all information "collected, assembled, or maintained by a governmental body." Holmes v. Morales, 924 S.W.2d 920, 922 (Tex.1996); accord Tex. Gov't Code Ann. § 552.002(a)(1) (West Supp.2001). Demonstrating a strong preference for disclosure over confidentiality, the Texas Legislature has articulated the underlying policy and purpose of the Act as follows:
[I]t is the policy of this state that each person is entitled, unless otherwise expressly provided by law, at all times to complete information about the affairs of government and the official acts of public officials and employees. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created.
Tex.Gov't Code Ann. § 552.001(a) (West 1994). The Legislature has also mandated that the Act "be liberally construed in favor of granting a request for information." Id. § 552.001(b). Liberal construction of the Act may require disclosure even in instances where inconvenience or embarrassment may result. Hubert v. Harte-Hanks Tex. Newspapers, Inc., 652 S.W.2d 546, 552 (Tex.App.-Austin 1983, writ ref'd n.r.e.). The Act does not limit the availability of public information except as expressly provided. Tex.Gov't Code Ann. § 552.006 (West 1994 & Supp.2001).
The Legislature has established a wide range of exceptions to the Act which permit governmental entities to withhold certain information from the public. Id. §§ 552.101 .132. A governmental entity like Arlington ISD that wishes to withhold requested information must submit a timely request for an attorney general determination, asserting which exceptions to the Act permit the agency to withhold the information. See id. § 552.301. The Act requires the attorney general to determine what information is excepted from disclosure. Id. § 552.306. A governmental entity seeking to withhold information bears the burden of establishing that the requested information falls within an exception to the Act. See Harlandale Indep. Sch. Dist. v. Cornyn, 25 S.W.3d 328, 330-31 (Tex.App.-Austin 2000, pet. filed). Exceptions to the Act should be construed narrowly. City of *158 Garland v. Dallas Morning News, 22 S.W.3d 351, 364 (Tex.2000).
Section 552.111 of the Act applies specifically to agency memoranda and states, "An interagency or intraagency memorandum or letter that would not be available by law to a party in litigation with the agency is excepted from the requirements of Section 552.021." Tex.Gov't Code Ann. § 552.111.[2] Thus, this exception permits agencies to withhold from disclosure only those agency memoranda that would not be available in litigation. This exception is virtually identical to the agency memoranda exception in the Freedom of Information Act and encompasses the common-law deliberative process privilege. 5 U.S.C. § 552(b)(5) (1994) (excepting from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency"); City of Garland, 22 S.W.3d at 364.
The Texas Supreme Court, however, has expressly declined to interpret the agency memoranda exception of the Act as broadly as its federal counterpart. City of Garland, 22 S.W.3d at 364. In City of Garland v. Dallas Morning News, the supreme court considered the proper scope of the agency memoranda exception in light of the Act's strong public policy favoring the disclosure of information. Id. at 354. In that case, the Dallas Morning News requested all written communications concerning the termination of the city's finance director. Id. The city sought to withhold a memorandum prepared by the city manager informing the finance director of his termination and listing the reasons for the termination. Id. Rather than sending the memorandum to the finance director, however, the city manager distributed it to city council members and sought their advice on the matter. Id. The memorandum was never sent to the finance director, who later resigned. Id.
In reaching its decision to require that the memorandum be disclosed, the court reasoned,
[P]ublic disclosure of agency communications reflecting deliberative processes on any subject, even nonpolicy communications, could have a chilling effect on agency employees' communications in the future. But the exception's purpose is not to prevent all disclosures that would chill all frank and open discussions. Its purpose has always been to promote the "frank discussion of ... policy matters." [EPA v. Mink, 410 U.S. 73, 87, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973).] Disclosure of information not related to policy matters will not inhibit free discussion among agency personnel about policy matters.
Id. at 364. The court recognized that to exempt any information solely because it is predecisional and deliberative would include "all agency information except postdecisional or purely factual information" and would "allow the exception to swallow the Act." Id. In reaching its conclusion that the memorandum at issue did not bear upon policymaking and, therefore, did not fall under the agency memoranda exception to the Act, the court held, "[T]he deliberative process privilege, as incorporated in the agency memoranda exception, protects only those agency communications or parts of agency communications that relate to the agency's policymaking." Id.
When determining the scope of the deliberative process privilege, we may look to federal case law for guidance. Id. at 360. In Vaughn v. Rosen, the Court of Appeals for the D.C. Circuit examined the scope of the deliberative process privilege as incorporated within the agency memoranda exception in the Freedom of Information Act. 523 F.2d 1136 (D.C.Cir.1975). *159 In that case, the court considered whether the United States Civil Service Commission should be compelled to disclose "`Evaluation of Personnel Management' reports, as well as reports and studies of a similar nature." Id. at 1139. These reports were described as the agency's evaluation of the manner in which the agency's managers and supervisors carried out their personnel management responsibilities. Id. The court observed that the reports were prepared in furtherance of the agency's responsibility to inspect agency personnel action and to determine compliance with applicable rules and regulations. Id. The reports covered a broad spectrum of topics; the scope of these reports included two nationwide reports on entire agencies, one regional report, and reports that assessed specific sites of an agency. Id. at 1140. The reports consisted of distinct evaluation and recommendation sections. Id.
In its analysis, the court noted that it was insufficient for an agency to assert the protection of the agency memoranda exception solely because a decisionmaker uses a document when determining policy. Id. at 1143. While acknowledging that decisionmakers frequently use factual reports or summaries in reaching determinations, the court concluded, "[I]t is beyond dispute that such documents would not be exempt from disclosure." Id. (citing Mink, 410 U.S. at 87-88, 93 S.Ct. 827). In reaching its conclusion that the evaluative sections of the reports must be disclosed, the court held that, to fall within this exception, an agency document must play a direct role within the deliberative process. Id. at 1144. In addition, the court observed that to view the scope of this exception more broadly would undercut the Freedom of Information Act because of the "huge quantity of amorphous management improvement activity in every agency which would be protected." Id. at 1146. The court recognized a public interest "in decisions deferred, avoided, or simply not taken for whatever reason, equal to its interest in decisions made, which from their very nature may more easily come to public attention than those never made." Id.
The attorney general has considered the scope of the agency memoranda exception to the Act in several formal open records decisions involving facts analogous to this case. See, e.g., Tex.Att'y Gen. ORD-464 (1987), ORD-419 (1984), ORD-213 (1978), ORD-209 (1978), ORD-160 (1977). In determining whether disclosure is required, we give due consideration to these decisions; such decisions, while not binding on courts, are persuasive. University of Tex. Law Sch. v. Texas Legal Found., 958 S.W.2d 479, 481 (Tex.App.-Austin 1997, no pet.); Rainbow Group, Ltd. v. Texas Employment Comm'n, 897 S.W.2d 946, 949 (Tex.App.-Austin 1995, writ denied).
The attorney general has uniformly required disclosure of factual information that may be severed from advice, opinion, and recommendation. Tex.Att'y Gen. ORD-419, at 3, ORD-615, at 3 (1993), ORD-464, at 6, ORD-213, at 2, ORD-209, at 2. Moreover, the attorney general has expressed a belief that, as opposed to classifying in terms of facts and opinions, discerning evaluation from recommendation is "a more appropriate and viable distinction" in determining the scope of this exception. Id. ORD-213, at 2 (referencing Vaughn, 523 F.2d at 1136); accord id. ORD-464, at 3-4.
In Open Records Decision 160, the attorney general concluded that the agency memoranda exception did not protect an audit report from disclosure. Id. ORD-160, at 3. In reaching its determination, the attorney general recognized that "`evaluations and factual data are not solely, or even largely, a part of the pre-decisional... process, but rather reflect final objective analyses of agency performance under existing policy.'" Id. at 2 (quoting Vaughn, 523 F.2d at 1143-44). The attorney general found that the audit report made no recommendations or suggestions *160 concerning the formulation of policy. Id. at 3. While acknowledging that an audit report may initiate or be used in a deliberative process, the attorney general concluded that "the facts and conclusions drawn in it are not a part of the deliberative process itself." Id.
Similarly, in Open Records Decision 213, the attorney general examined whether an internal audit fell within the scope of the agency memoranda exception. Id. ORD-213. The audit was comprised of evaluative findings and recommendations. Id. at 1. Citing Vaughn, the attorney general stated, "`They [the evaluative portions of the sample reports] provide the raw data upon which decisions can be made; they are not themselves a part of the decisional process.'" Id. at 2 (quoting Vaughn, 523 F.2d at 1145). The attorney general concluded that the recommendations were excepted under the Act but that the evaluative findings must be disclosed. Id. at 3.
Disclosure of individual survey responses and compiled results have been specifically addressed in Open Records Decisions 209, 419, and 464. Tex.Att'y Gen. ORD-464, ORD-419, ORD-209. In each of those decisions, the survey consisted of declarative statements and respondents were directed to indicate whether they agreed, disagreed, or had no opinion. Id. ORD-464, at 1 (stating that possible answers also included, "strongly agree," "strongly disagree," and "insufficient information"), ORD-419, at 4, ORD-209, at 1. In Open Records Decision 209, the attorney general found that the final statistical compilation of survey questions prompting an objective response was "factual and informational in character" and thus subject to disclosure. Id. ORD-209, at 2-3. In Open Records Decision 419, the attorney general reached the same conclusion with respect to survey results, which compiled student and faculty opinions and reflected the percentages of respondents who chose each answer. Id. ORD-419, at 4. Likewise, in Open Records Decision 464, the attorney general advised agency officials that declarative statements to which a respondent chooses one of six responses, such as "A (Strongly Agree), B (Agree), C (Undecided), D (Disagree), E (Strongly Disagree) or F (Insufficient Information)" and any compilation of these responses must be disclosed to the public. Id. ORD-464, at 1, 4-5.
We have reviewed the survey results in dispute here. The compiled results merely gather the survey response information in an easily digestible statistical format of bar graphs and aggregate percentages. We find that the compiled results constitute purely factual information.
Relying on Quarles v. Department of the Navy, Arlington ISD argues that a summary of factual material may be excepted if it is part of the deliberative process. See City of Garland v. Dallas Morning News, 969 S.W.2d 548, 557 (Tex.App.-Dallas 1998) (citing Quarles v. Department of the Navy, 893 F.2d 390, 392 (D.C.Cir. 1990)), aff'd, 22 S.W.3d 351 (Tex.2000). The facts in this case are distinguishable from the facts in Quarles. In that case, the court decided whether "certain cost estimates prepared by Navy officials in the course of the Navy's selecting homeports for ships in a new battleship group" should be excepted from disclosure under the deliberative process exemption, the federal counterpart to the agency memoranda exception of the Act. Quarles, 893 F.2d at 391. The factual information in Quarles, the cost estimates, were prepared as part of the decision-making process that preceded a new policy which established the locations of homeports for new battleships. Id.
In contrast, the survey results here represent calculations of total survey responses, which assess the effectiveness of existing school district policies and rate the current environments in each school within Arlington ISD. The compiled results, however, do not relate to the making of new policy. The surveys themselves are not distributed in contemplation of any new policy and merely permit the school district *161 to measure its performance under existing policy. As in Vaughn, we view these survey results as the Court of Appeals regarded the evaluative portions of the sample reports before it"the raw data upon which decisions can be made" but "not themselves a part of the decisional process." Vaughn, 523 F.2d at 1145.
Arlington ISD also argues that disclosure of the survey results "thwarts the purpose of the exception" and threatens to chill meaningful policy discussion. We disagree. In light of the policy underlying the Act and the Legislature's acknowledgment that the community in general and parents in particular should have a role in site-based decision-making, this information is precisely the sort that should be publicly accessible to foster candid and frank discussion. We conclude that the compiled survey results are not predecisional, intra-agency memoranda related to policymaking. We hold that the agency memoranda exception of the Act does not encompass the survey results.
Summary Judgment Evidence and Burden of Proof
Arlington ISD also asserts that the district court erred by striking three affidavits from Drs. Mac Bernd and Lawrence W. Lezotte from summary judgment evidence. We apply an abuse of discretion standard to the question of whether a district court erred in excluding evidence. City of Brownsville v. Alvarado, 897 S.W.2d 750, 753 (Tex.1995). A district court may be reversed under this standard only when a reviewing court finds that "the court acted in an unreasonable or arbitrary manner," Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex.1991), or "`without regard for any guiding rules or principles.'" Owens-Corning Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998) (quoting Alvarado, 897 S.W.2d at 754).
When seeking to reverse a judgment based on an improper evidentiary ruling, a complaining party "need not prove that but for the error a different judgment would necessarily have been rendered, but only that the error probably resulted in an improper judgment." Alvarado, 897 S.W.2d at 753; accord Malone, 972 S.W.2d at 43. To prevail, the party must demonstrate that "the judgment turns on the particular evidence excluded or admitted." Alvarado, 897 S.W.2d at 753-54. We review the entire record to determine whether a party has met this burden. Id. at 754. If any legitimate basis exists to support a district court's evidentiary ruling, then we must uphold the court's decision. Malone, 972 S.W.2d at 43; State Bar v. Evans, 774 S.W.2d 656, 658 n. 5 (Tex.1989) (citing McCormick on Evidence § 52, at 131 (3d ed.1984)).
Texas Rule of Civil Procedure 166a governs summary judgment affidavits. Subsection (f) of rule 166a states, "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Tex.R.Civ.P. 166a(f). Summary judgment may rest on the testimonial evidence of an interested witness if that evidence is uncontroverted, or of an expert witness if the evidence is clear, positive, credible, free from contradictions and inconsistencies, and could have been readily controverted. Id. 166a(c); Burrow v. Arce, 997 S.W.2d 229, 235 (Tex.1999).
The attorney general objected to both of Dr. Bernd's affidavits as conclusory and as legally insufficient to show that the survey results fell within the scope of the agency memoranda exception. In addition, the attorney general objected that Dr. Lezotte's affidavit did not demonstrate the requisite personal knowledge of the matters to which he testified. See Tex.R.Evid. 701; Tex.R.Civ.P. 166a(f). The attorney general also contended that proper foundations for these affidavits were not established. Specifically, if offered as experts' opinions, the affidavits of Drs. Bernd and *162 Lezotte fail to include their qualifications and the bases for their statements as required by the Texas Rules of Evidence. See Tex.R.Evid. 702, 703; see also United Blood Servs. v. Longoria, 938 S.W.2d 29, 30-31 (Tex.1997). Arlington ISD did attach Dr. Bernd's qualifications to its response to the attorney general's motion for summary judgment. The attorney general further argues that if the affidavits were offered as lay opinions, they did not inform the district court of the underlying facts upon which the opinions are based and should therefore be struck as not helpful. See Tex.R.Evid. 701.
These affidavits generally address the purpose of the surveys and the usefulness of the responses and predict a chilling effect on the candidness of respondents in future surveys if the compiled results are disclosed. The question before the court, however, is whether the agency memoranda exception encompasses the compiled survey results. The affidavits primarily focus on the survey itself and individual survey responses but not the compiled results. Concerning the compiled results, Dr. Bernd's first affidavit includes the following conclusions:
[T]he results [are] compiled as part of the site-based decision-making process that all school districts in Texas are required to implement. The survey results are related to the policymaking functions of the AISD in that they play a vital role in the decisional process, and in fact, they are specifically designed to perform that function. The survey results at issue reflect the opinions of the AISD's professional and paraprofessional staff and are of broad scope affecting the educational policy mission of the AISD as required by the site-based decision-making process.
Dr. Bernd's second affidavit concludes, "The survey results form the content of the deliberations that site-based decision-making teams engage in so they can develop school policy.... I know that release of the survey results would affect their [professional staff members] willingness to criticize the district and provide candid information for the surveys." Dr. Lezotte's affidavit states as follows:
In every case, I have said that the survey results should remain at the school and only be used by the school leadership team to add important information to the school improvement planning process. If the survey results are used for any other purposes, if they are released to the public, the process will lose its validity and usefulness.
Subjective beliefs, such as those found in Dr. Bernd's second affidavit and Dr. Lezotte's affidavit, are mere conclusions. See Texas Div.Tranter, Inc. v. Carrozza, 876 S.W.2d 312, 314 (Tex.1994). Conclusory affidavits are insufficient to raise a fact issue, Brownlee v. Brownlee, 665 S.W.2d 111, 112 (Tex.1984), and are insufficient to support summary judgment as a matter of law. Burrow, 997 S.W.2d at 235; Anderson v. Snider, 808 S.W.2d 54, 55 (Tex.1991).
The affidavits provide no facts to demonstrate how these compiled survey results function as something more than raw data used to justify decisions to initiate the policymaking process for purposes of repealing, revising, or adding a policy. Vaughn, 523 F.2d at 1145. While compiled survey results may trigger policymaking, this does not transform their role from a catalyst to a part of the process. Even assuming that the affidavits are admissible, they do not address the narrow issue before us. Arlington ISD has failed to demonstrate how the district court's ruling on these affidavits caused an improper judgment. See Alvarado, 897 S.W.2d at 753-54. We conclude that a legitimate basis exists to support the district court's evidentiary rulings. Therefore, the district court did not abuse its discretion in striking the affidavits.
Arlington ISD further argues that the attorney general did not carry its burden of proof or, alternatively, that Arlington *163 ISD raised a fact issue concerning the actual use of the information. As a movant for summary judgment, the attorney general bears the burden of establishing that no genuine issue of material fact exists and that judgment should be granted as a matter of law. See Clear Creek Basin Auth., 589 S.W.2d at 675-79. Whether information is subject to the Act and whether an exception to disclosure applies to the information are questions of law. City of Garland, 22 S.W.3d at 357; A & T Consultants, Inc. v. Sharp, 904 S.W.2d 668, 674 (Tex.1995). Arlington ISD also failed to raise a fact issue. See Brownlee, 665 S.W.2d at 112 (no fact issue raised by conclusory affidavit). In light of our conclusions that the argument in the attorney general's motion for summary judgment was meritorious and that Arlington ISD's affidavits were properly stricken, we reject this argument.
Arlington ISD also claims that the affidavits of Drs. Bernd and Lezotte should stand as proper summary judgment evidence because the attorney general offered no controverting affidavits. Arlington ISD asserts, "Where a non-movant fails to present controverting proof, summary judgment is proper." Texas Div. Tranter, Inc., 876 S.W.2d at 313. This proposition, however, does not relieve Arlington ISD, as movant, of the burden of establishing that no genuine issue of material fact exists and that judgment should be granted as a matter of law. See id. at 313-14; Swilley v. Hughes, 488 S.W.2d 64, 67 (Tex.1972) ("Summary judgment motions must stand on their own merits."). Because we conclude that the district court properly struck Dr. Lezotte's affidavit in its entirety and substantial portions of both of Dr. Bernd's affidavits, we find that there was no competent summary judgment evidence for the attorney general to controvert. We conclude that the district court did not err when it granted the attorney general's motion for summary judgment.

CONCLUSION
Accordingly, we affirm the district court's judgment, granting the attorney general's motion for summary judgment and denying Arlington ISD's motion.
NOTES
[1] See Tex.Gov't Code Ann. § 552.301 (West 1994 & Supp.2001).
[2] The definition of "public information," formerly in section 552.021(a) of the Texas Government Code, is now incorporated under section 552.002(a) of the same code. Compare Tex.Gov't Code Ann. § 552.021(a) (West 1994 & Supp.2001), with id. § 552.002(a) (West Supp.2001).